STATE OF NORTH CAROLINA v. STEPHEN MICHAEL SPARGO, DEFENDANT

No. COA06-1138

(Filed 6 November 2007)

**1. Appeal and Error— preservation of issues— appellate argument encompassed within presentation at trial**

Although defendant contends the State's argument on appeal in a multiple obtaining property by false pretenses case should not be considered since it differs from the prosecutor's argument in opposition to defendant's motion at the trial level, the Court of Appeals concluded the State's argument on appeal was fairly encompassed within the State's presentation to the trial court, and it thus addressed the merits of the State's appeal.

**2. Collateral Estoppel and Res Judicata— obtaining property by false pretenses—prior dismissal of four counts of the same offense**

The trial court erred by dismissing ten counts of obtaining property by false pretenses on the ground of collateral estoppel arising out of the court's prior dismissal of four counts of the

same offense, because: (1) even though the trial court found the State failed to prove defendant illegally converted the victim's money with respect to the first four checks, that finding did not necessarily mean that defendant acted legally with respect to the ten checks at issue in this case; (2) the judge's ruling in the prior case did not require a finding that permission existed for defendant to cash all checks given by the victim to him, but simply established that the State failed to prove a lack of permission as to those four checks; (3) even if the victim gave permission as to the first four, a jury could still find that she did not give permission to defendant to cash the ten checks which were not written at the same time as the four checks previously litigated; (4) a person may properly dispose of the proceeds of some checks, but then misappropriate the funds for subsequently received checks; and (5) based on the lack of joinder and the fact that the transactions at issue in this case occurred at a different time, collateral estoppel is inapplicable since the propriety of defendant's actions as to the first four checks will not be a question for the jury.

Judge WYNN concurring in the result.

Appeal by the State from order entered 26 May 2006 by Judge Timothy S. Kincaid in Gaston County Superior Court. Heard in the Court of Appeals 27 March 2007.

*Attorney General Roy Cooper, by Assistant Attorney General Christopher W. Brooks, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defenders Kristen L. Todd and Benjamin Dowling-Sendor, for defendant-appellee.*

GEER, Judge.

The State has appealed from the superior court's order dismissing 10 counts of obtaining property by false pretenses on the grounds of collateral estoppel arising out of the court's prior dismissal of four counts of the same offense. According to the State, each of the 14 counts were based on checks signed by Beatrice Lawter—leaving the amount and payee vacant—and given to defendant Stephen Michael Spargo for payment of medical expenses of Ms. Lawter's son. We hold that even though the trial court determined that the State had failed to prove that defendant illegally converted Ms. Lawter's money with respect to the first four checks, that finding does not necessarily

**STATE v. SPARGO**

[187 N.C. App. 115 (2007)]

mean that defendant acted legally with respect to the 10 checks at issue in this case. The doctrine of collateral estoppel is, therefore, inapplicable under the circumstances of this case, and the trial court erred in dismissing the charges.

## Facts

In April 2005, defendant was indicted on five counts of obtaining property by false pretenses (the "April indictments"). All five April indictments alleged the same false pretense:

> [D]efendant uttered a check drawn on the account of Beatrice Lawter to an agent of Wachovia Bank and thereby obtaining said monies as if he were entitled to said funds when in fact defendant did not have permission to cash said instrument, or to convert said monies to his own personal use.

Each of the April indictments varied only as to the amount of money involved and the date of the alleged offense: the amounts ranged between $750.00 and $1,700.00, and the dates of the alleged offenses ranged between 19 November 2003 and 25 November 2003.

In October 2005, defendant was subsequently indicted on 10 additional counts of obtaining property by false pretenses (the "October indictments"). Similar to the April indictments, the October indictments alleged that defendant illegally obtained Beatrice Lawter's money. The precise language of each of the October indictments was, however, different from the April indictments:

> The false pretense consisted of the following: defendant presented a pre-signed check by Beatrice Lawter for said amount for the care of her disabled son when in fact the check was intended for medical expenses of Ms. Lawter's son and the defendant had no right to the proceeds thereof.

In the October indictments, the dates of the 10 offenses ranged between 1 December 2003 and 16 January 2004, and the amounts involved ranged from $1,657.62 to $7,700.00.

At the outset of his trial on the April indictments, defendant made a motion to join the 10 charges specified in the October indictments. Judge Timothy S. Kincaid of Gaston County Superior Court denied the motion for joinder, and the case proceeded to trial only on the five April indictments. At trial, the State presented evidence from several witnesses, including Beatrice Lawter and her son, Kevin Joe Lawter.

Following the close of the State's evidence, defendant moved to dismiss the charges. The State voluntarily dismissed one of the five counts, conceding that its evidence was insufficient. The trial court then dismissed the four remaining counts on the grounds that there was insufficient evidence showing (1) defendant lacked permission to cash the checks signed by Ms. Lawter and (2) defendant converted the funds to his own use.

During pretrial proceedings with respect to the October indictments, defendant moved to dismiss each of the 10 counts, arguing that a trial would involve relitigation of issues already decided in his favor at the prior trial. Defendant contended that, as a result, the trial was barred by double jeopardy and collateral estoppel. In an order signed 25 April 2006, Judge Kincaid granted defendant's motion.

In that order, Judge Kincaid noted that the April indictments had been tried before him, and he had granted the motion to dismiss those charges because "the State had failed to offer sufficient evidence that the defendant did unlawfully with the intent to cheat and defraud, obtain the money from Ms. Lawter, and that the State failed to prove that the defendant did not have permission of Ms. Lawter to cash the instrument or to convert the monies to some personal use . . . ." He further noted: "the Court made a specific finding in that ruling that, based on the evidence presented by the State, the Defendant did in fact have consent to cash those checks . . . ."

With respect to the 10 October indictments, Judge Kincaid found that the indictments were "the same as those in the five previous cases, with the exception of the offense date and the amounts of United States currency . . . ." He noted that the victim was the same, the indictments relied upon the same allegation that money had been obtained from a bank by way of presenting a check for cash, and the indictments alleged that defendant converted Ms. Lawter's money to his own use. Judge Kincaid pointed out, however, that the October indictments, as opposed to the April indictments, specifically alleged that the check was intended for medical expenses of Ms. Lawter's son, and defendant had no right to the proceeds from the check. Judge Kincaid then found "[t]hat the State offered evidence at the previous trial of medical appointments for Kevin Joe Lawter, the son of Beatrice E. Lawter, but did not present any evidence of any medical bills, no evidence of whether any bills were outstanding and owing, or and [sic] evidence at all as to how the money was used by the defendant . . . ."

Based on those findings, Judge Kincaid concluded "[t]hat to allow a subsequent prosecution of these ten crimes, would place the defendant twice in jeopardy for the same offense and would allow the State to relitigate the same issues that have already been decided by a final judgment of the Court, a practice which is barred by the doctrine of collateral estoppel." The State timely appealed this order.

## Discussion

[1] The State's sole argument on appeal is that the trial court wrongly dismissed the 10 October indictments because the issues presented were different from the five indictments previously dismissed and thus not barred by the doctrine of collateral estoppel. As an initial matter, defendant maintains that we should not consider the State's argument on appeal because it differs from the prosecutor's argument in opposition to defendant's motion at the trial level. According to defendant, the State is attempting to "swap horses between courts in order to get a better mount," *Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934). We believe the State's argument on appeal is fairly encompassed within the State's presentation to the trial court and, therefore, we will address the merits of the State's appeal.

[2] As our Supreme Court has stated, "[t]he doctrine of collateral estoppel was held to be a part of the constitutional guarantee against double jeopardy in *Ashe v. Swenson*, 397 U.S. 436, 25 L. Ed. 2d 469 (1970)." *State v. Edwards*, 310 N.C. 142, 145, 310 S.E.2d 610, 613 (1984). "Under the doctrine of collateral estoppel, an *issue* of ultimate fact, once determined by a valid and final judgment, cannot again be litigated between the same parties in any future lawsuit. Subsequent prosecution is barred only if the jury could not rationally have based its verdict on an *issue* other than the one the defendant seeks to foreclose." *Id.* The prior proceeding must have necessarily determined the factual issue; the mere possibility that the issue was resolved does not prevent relitigation of the issue. *Id.* The burden of persuasion on a collateral estoppel defense rests with the defendant. *State v. Solomon*, 117 N.C. App. 701, 704, 453 S.E.2d 201, 204, *disc. review denied*, 340 N.C. 117, 456 S.E.2d 325 (1995).

"The application of the common law doctrine of collateral estoppel to criminal cases has been codified by N.C. Gen. Stat. § 15A-954(a)(7) . . . ." *State v. Safrit*, 145 N.C. App. 541, 552, 551 S.E.2d 516, 524 (2001). N.C. Gen. Stat. § 15A-954(a)(7) (2005) requires dismissal of criminal charges when "[a]n issue of fact or law essential to a successful prosecution has been previously adjudicated in favor

of the defendant in a prior action between the parties." Collateral estoppel, therefore, requires an "identity of issues." *State v. Summers*, 351 N.C. 620, 623, 528 S.E.2d 17, 20 (2000).

Our Supreme Court has articulated a four-part test for determining whether an "identity of issues" exists:

> (1) the issues must be the same as those involved in the prior action, (2) the issues must have been raised and actually litigated in the prior action, (3) the issues must have been material and relevant to the disposition of the prior action, and (4) the determination of the issues in the prior action must have been necessary and essential to the resulting judgment.

*Id.* We agree with the State that defendant has failed to establish that the charges in this case meet this test.

"The crime of obtaining property by false pretenses consists of the following elements: '(1) a false representation of a subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which one person obtains or attempts to obtain value from another.' " *State v. Cagle*, 182 N.C. App. 71, 75, 641 S.E.2d 705, 708 (2007) (quoting *State v. Parker*, 354 N.C. 268, 284, 553 S.E.2d 885, 897 (2001), *cert. denied*, 535 U.S. 1114, 153 L. Ed. 2d 162, 122 S. Ct. 2332 (2002)). With respect to the April indictments, Judge Kincaid determined that these elements were not met because the State had not presented sufficient evidence (1) that defendant lacked permission to cash the four checks at issue (elements one through three) and (2) that defendant converted the funds from those four checks to his own use (element four). Because of the denial of the motion for joinder, these rulings did not specifically address these two issues with respect to the 10 checks set forth in the October indictments.

The question remains, however, whether permission granted with respect to the four checks already litigated necessarily establishes that defendant had permission as to the 10 checks in this case. Judge Kincaid's ruling in the prior case did not require a finding that permission existed for defendant to cash all checks given by Ms. Lawter to him. It simply established that the State failed to prove a lack of permission as to those four checks. Even if Ms. Lawter gave permission as to the four, a jury could still find that she did not give permission to defendant to cash the 10 checks at issue in this case—none of which were written at the same time as the four checks previously litigated. For example, a person might give permission to another per-

son to take $20.00 out of her purse on a particular occasion, but that does not necessarily mean she has given that person permission to take $20.00 a month later.

In a similar manner, a person may properly dispose of the proceeds of some checks, but then misappropriate the funds for subsequently received checks. *Cf. State v. Perkins*, 181 N.C. App. 209, 221, 638 S.E.2d 591, 599 (2007) (holding that verdicts were not inconsistent when "the jury could have determined that defendant did not act in concert with respect to the afternoon entry into Ms. Clough's office, but that she did act in concert with respect to the larceny"). Thus, Judge Kincaid's determination that the State did not show an improper conversion of funds for the first four checks does not necessarily require the conclusion that defendant acted properly as to the later-written 10 checks. In short, while Judge Kincaid conclusively determined in the first trial that the evidence was insufficient to convict defendant of the four counts of obtaining property by false pretenses alleged in the April indictments, the court did not—indeed, because of the lack of joinder, could not—make such a determination concerning the 10 counts alleged in the October indictments.

Defendant argues, however, that the State's own evidence at the first trial "disproved the elements of Obtaining Property by False Pretenses for *all fifteen*" counts. (Emphasis supplied by defendant.) More specifically, defendant asserts that the testimony of Ms. Lawter and her son showed that defendant actually had "permission to fill in and cash all fifteen checks." Even assuming that the testimony can be read as applying to "all" the transactions alleged in all 15 indictments, our courts have stressed that the focus of the collateral estoppel inquiry is not on the evidence presented. As the Supreme Court stated in *Edwards*, 310 N.C. at 145, 310 S.E.2d at 613, "[t]he determinative factor is not the introduction of the same evidence [presented in the first trial], but rather whether it is absolutely necessary to defendant's conviction [in the second trial] that the second jury find against defendant on an *issue* upon which the first jury found in his favor." *See also Solomon*, 117 N.C. App. at 704-05, 453 S.E.2d at 204 ("The mere fact that the same evidence was introduced in a prior criminal trial does not make a later criminal trial subject to collateral estoppel. Rather, the determinative factor in a collateral estoppel defense is whether it is *absolutely necessary* to a defendant's conviction for the second offense that the second jury find against that defendant on an issue which was decided in his favor by the prior jury." (internal citation omitted)).

Because of the lack of joinder and the fact that the transactions at issue in this case occurred at a different time, the only issues necessarily decided in the first trial were whether defendant obtained money by false pretenses when negotiating each of the first four checks. The defense of collateral estoppel would only apply in this case if it were absolutely necessary for the jury—in rendering a verdict in this case—to decide that defendant did in fact obtain money by false pretenses with respect to the first four checks. In, however, any trial arising out of the October indictments, the propriety of defendant's actions as to those four checks will not be a question before the jury.

Accordingly, we hold that collateral estoppel has no application in this case, and the trial court erred in granting the motion to dismiss. We, therefore, reverse the order of the trial court dismissing the 10 October indictments.

Reversed.

Chief Judge MARTIN concurs.

Judge WYNN concurs in the result in a separate opinion.

WYNN, Judge concurring in the result.

I agree with the result reached by the majority opinion but write separately to discuss a conflicting rationale followed by the Ohio Court of Appeals but not yet adopted in North Carolina.

As noted by the majority, this Court has previously recognized our Supreme Court's holdings with respect to collateral estoppel in the criminal context:

> The mere fact that the same evidence was introduced in a prior criminal trial does not make a later criminal trial subject to collateral estoppel. Rather, the determinative factor in a collateral estoppel defense is whether it is absolutely necessary to a defendant's conviction for the second offense that the second jury find against that defendant on an issue which was decided in his favor by the prior jury.

*State v. Solomon*, 117 N.C. App. 701, 704-05, 453 S.E.2d 201, 204 (quoting *State v. Edwards*, 310 N.C. 142, 145, 310 S.E.2d 610, 613 (1984)), *disc. review denied*, 340 N.C. 117, 456 S.E.2d 325 (1995).

**STATE v. SPARGO**

[187 N.C. App. 115 (2007)]

Our opinion in *Solomon* is controlling in this case and supports the majority's conclusion that collateral estoppel does not apply here. However, in *State v. Green*, No. 83-05-046, 1983 Ohio App. LEXIS 13969 (unpublished, Ohio Ct. App., Dec. 12, 1983), a case very similar to the present case and cited by the trial court judge, the Ohio Court of Appeals applied different reasoning and found that collateral estoppel applied to bar a later prosecution.

In *Green*, the defendant was indicted on two counts of theft for writing checks payable to himself on a decedent's account. *Id.* at *8. Count I was dismissed on the defendant's motion, and Count II went to trial, where the judge found that the State failed to prove that the defendant obtained control over the property with an intent to deprive the owner, an element that was also an element of Count I. *Id.* at *8-*9.

The *Green* court concluded that since the State failed to prove in the first trial that the defendant obtained control over the property with the intent to deprive the owner, it was precluded from trying to prove the same factual issue in a subsequent trial. *Id.* at *10-*11. Additionally, the court noted that the two counts involved the same property (money in a bank account), the same parties, and the same essential issues. *Id.* at *11.

Similarly, this case involves the same parties, same issues, same bank account, and the same conduct. At the first trial, the judge specifically found that the State failed to offer sufficient evidence to prove two elements of obtaining property by false pretenses: (1) that Defendant unlawfully obtained money and (2) that Defendant did not have permission to cash or convert the checks. The elements that the State failed to prove in the first trial are also elements of the second group of ten counts of obtaining property by false pretenses. Under the reasoning of *Green*, the State failed to prove two elements of obtaining property by false pretenses at the first trial and would therefore be estopped from trying to prove the same factual issue in a later trial. However, because *Solomon* is the controlling case in North Carolina, I must concur in the result reached by the majority.