STATE v. FOX

[216 N.C. App. 144 (2011)]

STATE OF NORTH CAROLINA v. BERNIS HAROLD FOX

No. COA10-1485

(Filed 4 October 2011)

**1. Indictment and Information—two indictments—prosecution on first**

A second indictment for felony stalking was not superseding and defendant's prosecution was controlled by the first of two indictments where there was no indication that defendant was ever arraigned on the second indictment, there was no further reference to that file number in the record, and the jury was told that the State was proceeding on the first indictment.

**2. Constitutional Law—double jeopardy—felony stalking**

A conviction for felony stalking was vacated on double jeopardy grounds because the offense requires proof of multiple acts and the time periods for the course of conduct alleged here overlapped, so that the same acts could result in a conviction under either indictment. Even though the evidence of the earlier conduct might have been offered for other purposes, the evidence was sufficient to establish stalking under the prior indictment.

Appeal by defendant from judgment entered 23 September 2010 by Judge Franklin F. Lanier in Superior Court, Harnett County. Heard in the Court of Appeals 10 May 2011.

*Attorney General Roy A. Cooper, III, by Director, Victims and Citizens Services David L. Elliott and Agency Legal Specialist Brian C. Tarr, for the State.*

*Richard Croutharmel, for defendant-appellant.*

STROUD, Judge.

Bernis Harold Fox ("defendant") appeals from a conviction for felony stalking. Because evidence presented in support of defendant's indictment amounted to double jeopardy, we vacate defendant's conviction for felony stalking and attaining the status of habitual felon.

I. Background

On 22 February 2010, defendant was indicted for felony stalking and obtaining the status of habitual felon. Defendant was tried on

these charges at the 20 September 2010 Criminal Session of Superior Court, Harnett County. The State's evidence presented at trial tended to show that on 20 February 2009, defendant assaulted his girlfriend ("the victim") and as a result the victim obtained an *ex parte* domestic violence protection order against defendant, which was in effect from 5 March 2009 until 7 April 2009. Among other prohibitions, the protection order specifically ordered defendant not to commit

> any further acts of abuse or make any threats of abuse. The above-named respondent/defendant shall have no contact with the petitioner/plaintiff. No contact includes defendant-initiated contact, direct or indirect, by means such as telephone, personal contact, email, pager, gift-giving or telefacsimile machine[,] . . . . [and defendant] shall not assault, threaten, abuse, follow, harass, by telephone, visiting the home or workplace or other means or interfere with the plaintiff.

This protection order was extended to 31 March 2010 by consent order. Despite this order, in late February and early March 2009, defendant repeatedly called the victim on her cell phone, threatening to kill her, and was discovered by the victim's son in the victim's apartment while the victim was staying with another family. On 2 June 2009, defendant pled guilty to felony stalking of the victim and was sentenced to 11 to 14 months of imprisonment. The judgment listed the offense date as 5 March 2009. Defendant was incarcerated at Tyrrell Prison Work Farm from 7 July 2009 until 7 February 2010.

In October 2009, the victim received a letter in an envelope stamped "Tyrrell Prison Work Farm[.]" Even though the letter was addressed from "Ronald Ross" the victim believed it was from defendant based on its contents and its handwriting. The letter referenced many things that the victim and defendant had discussed privately, details regarding their sexual relationship, and specifically stated that "I never (hated) [sic] a bitch as much as I do you . . . for what u [sic] did[;]" the writer promised to make the victim "suffer[;]" after a reference to defendant's assault on the victim, it states "[n]ext time u [sic] won't be so lucky, if you don't kill yourself first[;]" and closed with "[s]ee you soon Bitch!" On 7 February 2010, around 7:50 p.m., the victim heard someone beating on the front door of her apartment. The victim looked through her window and saw defendant standing outside in front of her door. The victim then saw defendant raise his foot and kick her front door open. The victim called 911 and defendant left her apartment. Defendant was later apprehended by police approximately fifty yards from the victim's apartment and was

STATE v. FOX

[216 N.C. App. 144 (2011)]

arrested. At trial, defendant denied writing the letter to the victim or going to the victim's apartment and kicking in her front door.

On 23 February 2010, a jury found defendant guilty of felony stalking. Defendant subsequently pled guilty to obtaining the status of habitual felon and the trial court sentenced defendant to a term of 92 to 120 months imprisonment for the consolidated offenses. Defendant gave notice of appeal in open court. On appeal, defendant contends that (1) the trial court violated his federal and state constitution rights by subjecting him to double jeopardy; (2) the trial court abused its discretion in answering a jury deliberation question; (3) the trial court erred in admitting his statements to a prison official; and (4) the trial court erred in admitting into evidence a written report of defendant's confession.

## II. Double Jeopardy

Defendant contends that "the trial court violated the double jeopardy clause of the United States and North Carolina Constitutions by allowing the State to prosecute defendant on a 2010 felony stalking indictment that was facially duplicative of defendant's 2009 felony stalking conviction."

### 1. Preliminary issue

[1] Before addressing the substantive arguments as to double jeopardy, we first note that there is a preliminary issue as to which of two 2010 felony stalking indictments the State proceeded on in this case. Defendant was initially charged for felony stalking for offenses occurring "[o]n or [a]bout March 5, 2009 through February 8, 2010" in an indictment dated 22 February 2010 ("10-CRS-50582"). On 26 April 2010, defendant signed a "waiver/certification of arraignment" acknowledging that he had been arraigned on charge 10-CRS-50582. Again on 8 June 2010, defendant signed another "waiver/certification of arraignment" acknowledging that he had been arraigned on charge 10-CRS-50582 by his attorney. However, on 19 July 2010, defendant was charged for felony stalking by indictment but the date of the offense was changed to "[o]n or [a]bout April 7, 2009 through February 8, 2010[;]" the file number changed to 10-CRS-50582-A; and there is no indication on the indictment that it was a superseding indictment. Defendant contends that this 19 July 2010 second indictment did not supersede the 22 February 2010 first indictment because he was never arraigned on the 19 July 2010 second indictment for felony stalking. N.C. Gen. Stat. § 15A-646 (2009) states that

[i]f at any time before entry of a plea of guilty to an indictment or information, or commencement of a trial thereof, another indictment or information is filed in the same court charging the defendant with an offense charged or attempted to be charged in the first instrument, the first one is, with respect to the offense, superseded by the second and, *upon the defendant's arraignment upon the second indictment or information,* the count of the first instrument charging the offense must be dismissed by the superior court judge. The first instrument is not, however, superseded with respect to any count contained therein which charged an offense not charged in the second indictment or information.

(Emphasis added.)

Here, there is no indication in the record that defendant was ever arraigned on the 19 July 2010 second indictment. We also note there is no further reference to file number "10-CRS-50582-A" in the record, as the verdict sheet and judgment state that defendant was guilty of felony stalking pursuant to 10-CRS-50582. Further, Judge Lanier informed the jury at the beginning of jury selection: "The defendant has been charged with one count of felony stalking, which is alleged to have occurred on or about March 5th, 2009, through February 8, 2010," indicating that it is was the 22 February 2010 first indictment that the State was proceeding in this case. Therefore, the record shows that the second indictment did not supersede the first, *see id.*, and the indictment dated 22 February 2010 controls ("10-CRS-50582").

2. Substantive analysis

**[2]** We next turn to address defendant's substantive arguments as to double jeopardy. In evaluating a double jeopardy claim, "[i]t is well established that the Double Jeopardy Clause of the North Carolina and United States Constitutions protect against (1) a second prosecution after acquittal for the same offense, (2) a second prosecution after conviction for the same offense, and (3) multiple punishments for the same offense." *State v. Newman*, 186 N.C. App. 382, 386-87, 651 S.E.2d 584, 587 (2007) (citation and quotation marks omitted), *disc. review denied*, 362 N.C. 478, 667 S.E.2d 234 (2008). "The standard of review for this issue is *de novo*, as the trial court made a legal conclusion regarding the defendant's exposure to double jeopardy." *Id.* at 386, 651 S.E.2d at 587. According to our Supreme Court,

[t]he test of former jeopardy is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense. Hence, the plea of former jeop-

ardy, to be good, must be grounded on the 'same offense,' both in law and in fact, and it is not sufficient that the two offenses grew out of the same transaction. *If evidence in support of the facts alleged in the second indictment would be sufficient to sustain a conviction under the first indictment, jeopardy attaches, otherwise not.* However, if proof of an additional fact is required in the one prosecution, which is not required in the other, even though some of the same acts must be proved in the trial of each, the offenses are not the same, and the plea of former jeopardy cannot be sustained. . . .

*State v. Cameron*, 283 N.C. 191, 198, 195 S.E.2d 481, 486 (1973) (quoting 2 Strong, N.C. Index 2d, Criminal Law § 26, pp. 517-18) (emphasis added). This Court has further noted that "[t]he test of former jeopardy is not whether respondent has been tried for the same act, but whether he has been put in jeopardy for the same *offense*." *In re Drakeford*, 32 N.C. App. 113, 118, 230 S.E.2d 779, 782 (1977) (citation omitted and emphasis in original). Defendant contends that "the case meets the Cameron test for double jeopardy: the State's evidence in support of the facts alleged in the 2010 [felony stalking] indictment was sufficient to sustain a conviction under the 2009 [felony stalking] indictment."

The question before us is whether "evidence in support of the facts alleged in the [22 February 2010 felony stalking] indictment would be sufficient to sustain a conviction under the 2009 [felony stalking] indictment[.]" *See Cameron*, 283 N.C. at 198, 195 S.E.2d at 486. Here, the offenses in the 2010 and 2009 indictments were the "same . . . in law[,]" *see id.*, as defendant was charged in both with felony stalking, pursuant to N.C. Gen. Stat. § 14-277.3A(c) (2009), which states:

A defendant is guilty of stalking if the defendant willfully on more than one occasion harasses another person without legal purpose or willfully engages in a course of conduct directed at a specific person without legal purpose and the defendant knows or should know that the harassment or the course of conduct would cause a reasonable person to do any of the following:

(1) Fear for the person's safety or the safety of the person's immediate family or close personal associates.

(2) Suffer substantial emotional distress by placing that person in fear of death, bodily injury, or continued harassment.

N.C. Gen. Stat. § 14-277.3A(d) further prescribes the punishment and enhanced punishments for a violation of this statute:

> A violation of this section is a Class A1 misdemeanor. A defendant convicted of a Class A1 misdemeanor under this section, who is sentenced to a community punishment, shall be placed on supervised probation in addition to any other punishment imposed by the court. A defendant who commits the offense of stalking after having been previously convicted of a stalking offense is guilty of a Class F felony. A defendant who commits the offense of stalking when there is a court order in effect prohibiting the conduct described under this section by the defendant against the victim is guilty of a Class H felony.

As this statue permits the enhancement of punishment, it appears from the 2009 judgment that defendant pled guilty to felony stalking as a class "H" felony and the offense date was 5 March 2009. Therefore, the 2009 stalking conviction was enhanced from a Class A1 misdemeanor to a class H felony because there was "a court order in effect prohibiting the conduct described under this section by the defendant against the victim." *See* N.C. Gen. Stat. § 14-277.3A(d).

Accordingly, we turn next to determining whether the offenses in the 2010 and 2009 indictments were the "same . . . in fact[.]" *See Cameron*, 283 N.C. at 198, 195 S.E.2d at 486. As noted above, the 22 February 2010 felony stalking indictment was for offenses occurring "[o]n or [a]bout March 5, 2009 through February 8, 2010[.]" From the record before us it appears that the State presented evidence, over defendant's objection, regarding defendant's interactions with the victim from February 2009 until April 2009. The State was permitted to enter into evidence the victim's 23 February 2009 petition for an *ex parte* domestic violence protection order against defendant, and the resulting *ex parte* domestic violence protection order which was in effect until 7 April 2009. The clerk of court was permitted to read the victim's statement from that petition:

> on the night of February 19, we had an argument and I asked him not to disrespect me in my house. He got mad and pushed me to the floor, hit me, started pulling my hair. Took my cell phone and broke it, hit me in the face with it and hit me upside the head. I ran next door to get away. They called the police.

The order prohibited defendant from *inter alia* contacting the victim by phone or going to her house. The State was also allowed to enter

into evidence the 7 April 2009 consent order extending the domestic violence protection order from 7 April 2009 until 31 March 2010. The victim testified that in February 2009, she got in an argument with defendant and he began hitting her multiple times with his fists, broke her cell phone, and spit in her face, while repeating to her "I hate you, you bitch." As defendant was leaving her apartment, he stomped on the side of her leg, while she was lying on the floor bleeding, telling her "see what you made me do, you stupid bitch?" The victim testified that as a result of this assault, she was transported to the hospital by ambulance and her injuries included two black eyes, "a knot on [her] forehead" and on the side of her face, and bruises all over her body. The State entered into evidence pictures of the victim following the assault in February 2009. The victim further testified that even after she obtained the domestic violence protection order defendant continued calling her on her "cell phone every day[,]" calling her a "bitch" and telling her that he was going to kill her, which made her feel "scared." The victim testified that after she obtained the domestic violence protection order she was not living in her apartment because she was scared that defendant would return and several times defendant broke into her apartment. The victim's son also confirmed that after the February 2009 assault by defendant, his mother would not stay in her apartment because she was afraid of defendant. He further testified that on 13 March 2009 he went to his mother's apartment to check on it. He entered and found defendant in the apartment, which caused defendant to exit out the back door, and he called the police.

Even though the State went on to present evidence as to defendant's conduct towards the victim in late 2009 and 2010, the above evidence establishes a conviction for stalking as it shows that defendant, following the protective order, willfully harassed the victim by calling her on her cell phone several times and entered her apartment and "a reasonable person" would have feared for their personal safety, given defendant's history of physically assaulting the victim. See N.C. Gen. Stat. § 14-277.3A(c). Thus, this early 2009 evidence "in support of the facts alleged in the [22 February 2010] second indictment would be sufficient to sustain a conviction under the [2009] first indictment[.]" See Cameron, 283 N.C. at 198, 195 S.E.2d at 486. Further, there was evidence presented that defendant was in violation of a protection order when he committed this harassment, justifying the increase of defendant's punishment from a Class A1 misdemeanor to a Class H felony. See N.C. Gen. Stat. § 14-277.3A(d). Therefore, because of the 22 February 2010 felony stalking indictment

dated "[o]n or [a]bout March 5, 2009 through February 8, 2010[,]" and the presentation of the above evidence in support of the 2010 indictment for actions occurring in March 2009, "jeopardy attache[d]" *Cameron*, 283 N.C. at 198, 195 S.E.2d at 486, which resulted in "multiple punishment[] for the same offense." *See Newman*, 186 N.C. App. at 386-87, 651 S.E.2d at 587. Accordingly, we hold that the trial court erred in allowing this 2009 evidence in violation of defendant's constitutional rights to be free from double jeopardy.

The State argues that "additional facts were required to prove the allegations in the indictment from February 22, 2010, that were not required in the previous [2009] indictment." The State's argument is referencing the portion of *Cameron* which states

if proof of an additional fact is required in the one prosecution, which is not required in the other, even though some of the same acts must be proved in the trial of each, the offenses are not the same, and the plea of former jeopardy cannot be sustained. . . .

*Cameron*, 283 N.C. at 198, 195 S.E.2d at 486. The difference between *Cameron* and this case is that *Cameron* dealt with offenses which were committed on one particular occasion, while this offense requires proof of a "course of conduct" or harassment "on more than one occasion[.]" *See* N.C. Gen. Stat. § 14-277.3A(c). In *Cameron*, the defendant possessed and sold heroin on one particular date, and he was properly convicted of two separate crimes arising from this event, both possession and sale of a narcotic drug. *Id.* at 192, 195 S.E.2d at 482. Here, the crime charged requires proof of multiple acts of defendant; this was true for the 2009 conviction just as for the 2010 charge. Because the time periods of the "course of conduct" for both indictments overlapped, the same acts could result in a conviction under either indictment. For this reason, the offenses in the 2010 and 2009 indictments were the "same . . . in law[,]" *see Drakeford*, 32 N.C. App. at 118, 230 S.E.2d at 782, as defendant was charged in both instances with felony stalking, pursuant to N.C. Gen. Stat. § 14-277.3A(c). Even though N.C. Gen. Stat: § 14-277.3A(d) permits the enhancement of the punishment based on whether the defendant had been previously convicted of stalking or had stalked the victim while a court order was in effect prohibiting the conduct described, there is no indication in the statute that these punishment enhancements amount to a completely different crime such that "proof of an additional fact is required" to satisfy the elements of stalking "in the one prosecution, which is not required in the other[.]" *See Cameron*, 283 N.C. at 198, 195 S.E.2d at 486.

The State further argues that the evidence of defendant's interactions with the victim from February 2009 until April 2009 was presented to show that defendant "had been convicted of Felony Stalking prior to the current charge[;]" "the context in which the [domestic violence protection order] was taken out[;]" to establish the victim's "reasonable fear" of defendant; and in any event, the trial court gave the jury instructions that the jury should only consider this evidence of "a prior conviction in passing upon [defendant's] guilt or innocence of the primary charge." This may be true, if the indictment had properly alleged a course of conduct beginning after March 2009, but it did not. As noted above, the punishment for felony stalking can be increased from a Class A1 misdemeanor to a Class F felony if a defendant "commits the offense of stalking after having been previously convicted of a stalking offense[.]" See N.C. Gen. Stat. § 14-277.3A(d). Therefore, evidence of defendant's prior conviction for stalking or a jury charge regarding that prior conviction would have been permitted. However, here, the State not only presented evidence of defendant's prior 2009 conviction for felony stalking and the domestic violence protection order in place, it also presented sufficient evidence to establish felony stalking in February 2009 to March 2009, including defendant's repeated calling of the victim on her cell phone and entering in her apartment, as discussed above, and the admission of this evidence in support of his 2010 indictment amounted to double jeopardy. Even though the evidence may have been offered for other purposes and the trial court gave an instruction to the jury, the introduction of the evidence of defendant's interactions with the victim during early 2009 amounted to a violation of defendant's constitutional rights.

Therefore, we hold that the indictment for defendant's 2010 conviction for felony stalking was for offenses occurring "[o]n or [a]bout March 5, 2009 through February 8, 2010" ("10-CRS-50582") and the State put forth sufficient evidence of defendant's interactions with the victim during March 2009 to amount to double jeopardy. Accordingly, we vacate defendant's 2010 conviction for felony stalking. See State v. Williams, 201 N.C. App. 161, 174, 689 S.E.2d 412, 419 (2009) (vacating the defendant's convictions on double jeopardy grounds). Because we vacate defendant's underlying felony conviction, we also vacate defend-ant's judgment sentencing defendant as a habitual felon. See N.C. Gen. Stat. § 14-7.5 (2009). As defendant's convictions have been vacated, we need not address his other issues on appeal.

VACATED.

Judges McGEE and BEASLEY concur.